**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-cr-00088 |
| ) | Chief Judge Crenshaw |
| CHARLES BRADEN ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

What began as a 3-count criminal case against Reginald Johnson ballooned into a 31-count, 6-Defendant case with the return of the Second Superseding Indictment (Doc. No. 67) on June 27, 2016. On February 28, 2018, a Third Superseding Indictment (Doc. No. 481) was returned that increased the number of counts to 39, but reduced the number of defendants by one because Santez Bradford had pled guilty to charges contained in the Second Superseding Indictment  Since then, Johnson and Aweis Haji-Mohamed entered pleas of guilt, and Marquis Brandon was acquitted on some charges and convicted on other charges after a jury trail. That leaves Charles Braden who has filed several Motion in relation to his trial that is scheduled to begin on December 4, 2018.

### I. Motion in Limine To Exclude Evidence of Co-Defendant's Statements and or Confessions (Doc. No. 550)

By way of this motion, Braden requests "that all pre arrest and post arrest, incriminatory statements by co-defendants Marquis Brandon and Aweis Haji- Mohamed made to any Government witness be excluded from evidence at trial." (Doc. No. 550 at 2). In doing so, he anticipates that the Government intends to call Ernest Eddie as a witness at trial who is going to tell the jury about a conspiracy to commit a robbery that was never reported to the police, never investigated, and for which the gun was never found. Braden contends it is "likely" that Eddie "will provide multiple

statements by codefendant Aweis Muhammed [sic] about the conspiracy which Defendant Braden will be unable to cross examining as he is a non testifying codefendant in this case." (Id.). He therefore request that any such testimony be excluded at trial based upon Bruton v. United States, 391 U.S. 123 (1968).

In response, the Government neither admits nor denies that Eddie will be called at trial. If he is, the Government has recognized its obligations under Bruton, as well as the requirements for admitting a co-conspirator's statements.

"The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant 'to be confronted with the witnesses against him,' and this 'includes the right to cross-examine witnesses.'" Cruz v. New York, 481 U.S. 186, 187-89 (1987) (citation omitted). In Bruton, the Supreme Court held that a defendant is deprived of that right when a co-defendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant. The decision was grounded on the recognition that

> there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored . . . . Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

Bruton, 391 U.S. at 135-136. Thus, the Bruton rule, as it has come to be known, teaches that "[w]here two or more defendants are tried jointly, . . . the pretrial confession of one of them that implicates the others is not admissible against the others unless the confessing defendant waives his Fifth Amendment rights so as to permit cross-examination." Cruz, 481 U.S. at 190. While Bruton involved a joint trial, the rule derived therefrom also applies where the declarant is unavailable at trial and has not previously been subjected to cross-examination about the statement. Crawford v.

2

Washington, 541 U.S. 36, 54 (2004); Nelson v. O'Neil, 402 U.S. 622, 626 (1971); United States v. Ramos-Cardenas, 524 F.3d 600, 609 (5th Cir. 2008).

Despite the breadth of the rule, the Supreme Court, in Richardson v. Marsh, 481 U.S. 200, 208 (1987), limited its reach to statements that were "incriminating on [their face] and expressly implicated the co-defendant." That is, "a nontestifying codefendant's statement must do more than incriminate by implication to violate the Confrontation Clause." United States v. Alkufi, 636 F. App'x 323, 334 (6th Cir. 2016). "Cases interpreting Bruton have found no Confrontation Clause violation where a nontestifying codefendant's statement is redacted to omit any reference to the defendant and implicates the defendant only when linked to other evidence presented at trial." Id. (citations omitted). As a consequence, the Sixth Circuit in United States v. Vasilakos, 508 F.3d 401, 408 (6th Cir. 2007), adopted "the rule followed by the Fourth, Eighth, and Tenth Circuits that permits the introduction of a declarant-codefendant's self-incriminating, extra-judicial statement, in a joint trial, where the defendant's name is redacted and a neutral term is substituted," because it "avoids any Sixth Amendment or Bruton violation." Here, because Braden's name can be replaced in a statement with "a neutral term," such as "another person" or "another individual," id. so as to avoid a Bruton problem, his Motion in Limine will be denied with the understanding that any written statements will be properly redacted.

As for conspiracy, the Government properly notes that statements in furtherance of a conspiracy are excepted from the hearsay rule pursuant to Federal Rule of Evidence 801(d)(2)(E), which sets forth the factors to be considered in determining the existence of a conspiracy under United States v. Enright, 579 F.2d 980 (6th Cir. 1978), and then provides an extended and formulaic recitation of the three different methods the Court can utilize under United States v. Vinson, 606

3

F.2d 149 (6th Cir. 1979), to determine whether the Enright factors have been met. These arguments are bit wide of the mark, however, because they do not address the preliminary question of whether co-conspirator statements are encompassed by the Bruton rule.

It has been observed "that Bruton makes clear that the protections of the Confrontation Clause are at their zenith whenever . . . the prosecution offers into evidence a non-testifying hearsay declarant's confession that names the accused as his partner in crime." Jones v. Basinger, 635 F.3d 1030, 1049 (7th Cir. 2011). Nevertheless, "[t]he co-conspirator exception to the hearsay rule is a narrow but well-established exception [to Bruton] which has been frequently sanctioned and scrupulously applied by the federal courts." Campbell v. United States, 415 F.2d 356, 357 (6th Cir. 1969); see also United States v. Kendricks, 623 F.2d 1165, 1167 (6th Cir. 1980) (rejecting defendant's argument that Bruton prohibits co-conspirator's statements); United States v. Patterson, 713 F.3d 1237, 1247 (10th Cir. 2013) (holding that statements made in furtherance of a conspiracy "present no Sixth Amendment problem"); United States v. De La Paz-Rentas, 613 F.3d 18, 29 (1st Cir. 2010) (stating that Bruton does "not bar the use of a co-conspirator statement made in furtherance of the conspiracy and admissible under a traditional hearsay exception"); United States v. Alcantar, 271 F.3d 731, 739 (8th Cir. 2001) (holding that "Bruton does not apply where the hearsay statement is otherwise admissible under Rule 801(d)(2)(E)").

A number of rationales have been given for the co-conspirator's statement exception to the Bruton rule. "First, Bruton was specifically limited to hearsay 'clearly inadmissible against (the defendant) under traditional rules of evidence,'" but, as already noted, evidence in furtherance of a conspiracy is an exception to the hearsay rule under Fed. R. Evid. 801(d)(2)(E). United States v. Kendricks, 623 F.2d 1165, 1167 (6th Cir. 1980) (quoting Bruton, 391 U.S. at 128 n.3). "Second,

4

the decision in Bruton was motivated, in part, by a concern that the credibility of confessors who inculpate alleged co-conspirators is 'inevitably suspect . . . given the recognized motivation to shift blame onto others,'" but "once the prosecution meets the [requriements for establishing a conspiracy], statements made by one co-conspirator are treated as vicarious admissions by the other co-conspirators." Id. (quoting Bruton, 391 U.S. at 136). Third, "the primary object" of the Sixth Amendment concerns "testimonial hearsay," but, "[b]y definition," a conspirators' statements in furtherance of the conspiracy "are not by their nature testimonial; the one making them has no 'awareness or expectation that his or her statements may later be used at a trial.'" United States v. Sutton, 387 F. App'x 595, 601 (6th Cir. 2010) (citation omitted). Whatever the rationale, the Rule 801(d)(2)(E) "exception is 'firmly rooted' enough in [Sixth Circuit and Supreme Court] jurisprudence to assuage any Bruton concerns." United States v. Mooneyham, 473 F.3d 280, 287 (6th Cir. 2007) (citation omitted).

Because written statements can be redacted and statements in furtherance of a conspiracy do not violate the Bruton rule, Braden's Motion in Limine To Exclude Evidence of Co-Defendant's Statements and or Confessions (Doc. No. 550) is **DENIED.**

**II. Motion to Strike Alias From the Indictment (Doc. No. 553)**

Braden requests that his alias, "Manstinka," be stricken from the Indictment, pointing out that the Sixth Circuit "generally 'disfavors the use of aliases in indictments and at trial, and permit[s] their use only when they are relevant to identify the defendant.'" United States v. Johnson, 726 F. App'x 393, 401 (6th Cir. 2018) (quoting United States v. Williams, 158 F. App'x 651, 654 (6th Cir. 2005)). In response, the Government notes that whether to allow the use of aliases is a matter committed to the discretion of the Court, and the use of an alias "is permissible if it is necessary to

5

connect the defendants with the acts charged." United States v. Emuegbunam, 268 F.3d 377, 395 (6th Cir. 2001). The Government goes on to assert that because "'Manstinka,' does not imply any criminal activity," and "many of the witnesses who will testify know defendant Braden as 'Manstinka' and commonly refer to him by that alias," the Court should not strike that "benign" alias from the indictment presented to the jury, nor "prohibit the United States from utilizing this alias in opening and closing arguments, [or] prohibit its use by witnesses when discussing the defendant." (Doc. No. 574 at 3).

The Government's assertion that it should have free reign to use a "benign" alias is not in keeping with Sixth Circuit precedent. "Indeed, for the past 45 years, [the Sixth Circuit] strongly ha[s] 'disapprove[d] the practice of including aliases in indictments.'" Johnson, 726 F. App'x at 401 (quoting United States v. Wilkerson, 456 F.2d 57, 59 (6th Cir. 1972)). A trial court "complie[s] with this general rule" when it strikes the alias from the indictment and permits the government "to refer to aliases at trial when *relevant* to identifying the respective Defendant." Id. (emphasis in original) (citation omitted). That a nickname is supposedly "benign" matters not because the Sixth Circuit "cannot condone" the use of even innocuous sounding nicknames such as "'Big C,' a/k/a/ 'Big Church,' a/k/a 'Big Churp,' a/k/a 'Big.'" United States v. Randolph, 685 F. App'x 429, 435 (6th Cir. 2017).

Past experience can be a wonderful teacher. At the trial of co-Defendant Marquis Brandon, the Court learned: (1) some witnesses knew individuals by their nicknames only; (2) those who knew individuals by their nicknames were able to testify using that individual's real name when properly prepared, although a few slip-ups occurred; (3) the jury caught on to the use of nicknames early on in the proceeding; (4) the continued use of nicknames and real names became more

6

confusing than helpful; (5) the Government has a penchant for asking witnesses about a person's "government name," when inquiring about the persons real or birth name; and (6) the Court and the Government have a markedly different view of what it means to keep the use of nicknames to a minimum. In short, the Court and jury heard the nicknames "Cheefa," "Son Son," "Dummy," "Manstinka," and "Wacco" far more than was necessary to establish the identities of Johnson, Haji-Mohamed, Brandon, Braden, and Bradford, respectively.

Given what happened in the last trial and the position the Government has taken in relation to the upcoming trial involving Braden (*i.e.* that it should be allowed to refer to nicknames from the start to finish of trial), it is obvious that some restraints need to be imposed to comply with Sixth Circuit precedent. In his reply brief, Braden suggests the following limitations:

> If a witness claims to know Mr. Braden only as "Manstinka," the Government should simply ask the witness whether they can make an in-court identification of Mr. Braden as the man they know as "Manstinka." If the witness does so identify Mr. Braden, the Government should then be required to instruct the witness that Mr. Braden's legal name is "Mr. Braden" and instruct the witness to refer to Mr. Braden as "Mr. Braden" henceforth. Obviously, the Government would need to use the word "Manstinka" to a limited extent in order to conduct such examinations, and this limited use should be permitted for witnesses who indicate that they know Mr. Braden only as "Manstinka." However, there is simply no need for the Government to use "Manstinka" beyond such procedures, which are sufficient to accommodate the limited purpose of identification. Thus, the Government should not be permitted to say "Manstinka" in any other context, and the alias should be stricken from both the indictment and jury instructions.

(Doc. No. 603 at 3).

In the Court's view, Braden offers a solution that is in keeping with prevailing law, albeit one that can be made more effective with a couple of minor alterations. It is unnecessary to formally strike "Manstinka" from the Indictment. Rather, the Indictment read and given to the jury will simply be revised to include only those counts referencing Braden, and eliminating any references

to nicknames. Further, during opening statements, the Government will be allowed to state in the most general way that Braden and others may be known by nicknames, without getting into specifics at that point. Finally, when inquiring into whether a witness knows Braden solely by the nickname "Manstinka," the Government will refrain from referring to "Charles Braden" or anyone else as his "government name." While that may be street slang for a person's real name, it unnecessarily conjures up off-putting images of the government issuing names when, in fact, even those who use street slang know what is meant by a person's real name.

Subject to the foregoing, Braden's Motion to Strike Alias From the Indictment (Doc. No. 553), as revised by the request made in his reply brief, is **GRANTED.**

### III. Motion to Sever Defendants Under Rule 8(b) and Renewed Motion to Sever Under Rule 14 (Doc. No. 604)

Braden requests that the charges against him be severed from those of Brandon. This Motion is **DENIED AS MOOT** because a separate jury trial has already been held in relation to the charges against Brandon.

### IV. Motion for Release from Subpoena, or Alternatively, to Modify Conditions of Release for Material Witness Kisha Pollard (Doc. No. 751)

Finally, as a housekeeping matter, the Clerk shall **TERMINATE** this as a pending motion because it has been resolved by Magistrate Judge Holmes's July 18, 2018 Order (Doc. No. 759).

IT IS SO ORDERED.

---
WAVERLY D. CRESHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE